# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

DONELLE L. JOHNSON,

      Petitioner,

      v.                                      Case No. 15-CV-121

ROBERT HUMPHREYS,

      Respondent.

---

## DECISION AND ORDER

---

Donelle L. Johnson, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Johnson was convicted of first degree sexual assault of a child and was sentenced to sixteen years of imprisonment, consisting of ten years of initial confinement followed by six years of extended supervision. (Judgment of Conviction, Docket # 1-1 at 26-27.) Johnson alleges that his conviction and sentence are unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied.

### BACKGROUND

After a bench trial, Johnson was convicted in January 2011 of one count of first degree sexual assault of a child under thirteen. (*State v. Johnson*, No. 2013AP697 (Wis. Ct. App. Feb. 21, 2014), Docket # 1-1 at 4.) The count stemmed from allegations made by M.J. that Johnson had been sexually assaulting her during her weekend visits to his home since she was seven years old. (*Id.*) Following his conviction, Johnson's appointed postconviction and appellate counsel filed a no-merit report pursuant to *Anders v. California*, 386 U.S. 738 (1967) and Wis. Stat. § 809.32. Johnson submitted a response, and his counsel filed two supplemental no-merit reports. (*Id.* at 3-4.) The court

of appeals concluded that no arguably meritorious issues existed for an appeal, and affirmed the conviction on February 21, 2014. (*Id.* at 4.) Johnson filed a petition for review with the Wisconsin Supreme Court, which was denied on August 4, 2014. (Petition for Review, Docket # 1-1 at 22.) Subsequently, Johnson filed this petition for writ of habeas corpus.

## STANDARD OF REVIEW

Johnson's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d) (1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court

'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.*

(quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748-49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

Johnson alleges that his custody is unlawful on the following grounds: (1) insufficient evidence to support the conviction; (2) ineffective assistance of trial counsel; and (3) the trial court erroneously admitted other acts evidence. (Habeas Petition, Docket # 1 at 6-8.) I will address each argument in turn.

*1.    Sufficiency of the Evidence*

Johnson argues there was insufficient evidence to sustain his conviction for first degree sexual assault of a child. The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute

the crime for which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When insufficiency of evidence is asserted as the basis for a habeas petition, the petitioner must show "'upon the record evidence adduced at the trial no rational trier of fact could have found proof beyond a reasonable doubt.'" *Cabrera v. Hinsley*, 324 F.3d 527, 533 (7th Cir. 2003) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 324 (1979)). The inquiry does not require the federal habeas court to "ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citing *Woodby v. INS*, 385 U.S. 276, 282 (1966)). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

A federal habeas court determines the sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. *See Jackson*, 443 U.S. at 324 n. 16. Under Wisconsin law, a defendant is guilty of first degree sexual assault of a child, Wis. Stat. § 948.02(1)(e), if the State proves that the defendant had sexual contact or sexual intercourse with a person who has not attained the age of 13 years. Wis. JI-Crim 2102E (2011).

In this case, in considering Johnson's sufficiency argument, the Wisconsin Court of Appeals used a standard consistent with *Jackson*. While the court of appeals did not cite to *Jackson*, it cited to *State v. Poellinger*, 153 Wis.2d 493, 451 N.W.2d 752 (1990), which pronounces a state law standard that is the functional equivalent to *Jackson*:

> [I]n reviewing the sufficiency of the evidence to support a conviction, an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate

- 4 -

court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

153 Wis. 2d at 507, 451 N.W.2d at 757–58 (1990) (internal citation omitted). As such, the court of appeals identified the correct governing legal rule. Thus, the only issue before me on habeas review is whether the state court unreasonably applied that rule to the facts of Johnson's case or unreasonably determined the facts in light of the evidence presented. In making that determination, it is important to recall that in a federal habeas corpus proceeding, the court's review is tempered by AEDPA's deferential constraints.

In finding Johnson's sufficiency of the evidence argument lacked merit, the court of appeals considered the fact that the State needed to prove two elements: (1) that Johnson had sexual contact with M.J. and (2) that M.J. had not yet attained the age of thirteen years at the time of the sexual contact. (Docket # 1-1 at 8.) The court of appeals considered the evidence presented at trial and found ample evidence of guilt. (*Id.* at 10.) Specifically, the court of appeals considered the fact that M.J. testified that she was born on October 5, 1999 and that when she was ten years old, Johnson got drunk and approached her while she was sleeping, removed her pants, took off his clothes, and "put his stuff in [her] lower part." (*Id.* at 8-9.) M.J. also testified that Johnson had similarly assaulted her approximately ten times, and the assaults began when she was seven years old. (*Id.* at 9.)

The court of appeals considered the fact that while M.J. could not testify precisely when the sexual assault occurred, she stated that it was cold outside. (*Id.*) The court of appeals also considered the testimony of a nurse who first interviewed M.J. on January 28, 2010 as part of the response to a report that M.J.'s mother was physically abusing her and that during the examination, M.J. disclosed ongoing sexual abuse by Johnson. (*Id.*) The court of appeals considered the testimony of

an expert in the dynamics of child sexual assault who testified as to the reasons why children sometimes delay disclosing sexual assault and may be inconsistent when describing events. (*Id.*)

The court of appeals also considered an audiovisual recording of a statement M.J. gave to police on January 28, 2010, in which M.J. stated that on the previous Saturday night, during a weekend visit with Johnson in his home, Johnson took off her clothes and "put his stuff in [her's]." (*Id.*) After M.J. disclosed Johnson's sexual abuse, she described physical abuse by her mother. (*Id.*) M.J. then explained that she wanted to live with Johnson because her mother's home was "a terrible place," and that Johnson had promised not "to do that stuff anymore." (*Id.*) The court of appeals also considered a recorded statement M.J. gave to a policewoman in May 2006 in which M.J. said that Johnson had touched her "puddin'," which she explained is the part of her body she uses to go to the bathroom. (*Id.*)

The court of appeals also considered the testimony of Johnson's girlfriend, LaBrittany B., who testified that on the weekend of January 22, 2010, she was home with Johnson while his children and M.J. were visiting. (*Id.* at 10.) LaBrittany B. testified that Johnson drank no alcoholic beverages and that at no time during the night did Johnson get out of the bed that she shared with him. (*Id.*) The court of appeals considered the trial court's finding that LaBrittany B. lied to protect Johnson because he is the father of her son. The trial court found M.J. to be credible as she had no motive to lie and because she had made her most recent disclosure at a time when she hoped to be taken from her physically abusive mother and placed with Johnson. The court of appeals also noted that the trial court recognized that "the details are all over the map," but found that M.J. was "consistent in one thing; and that is that the person that she calls her daddy, Donelle Johnson, puts his stuff in her private area." (*Id.*)

Johnson argues that the evidence was insufficient to support his conviction because he was charged with an assault that occurred in January and M.J. testified that no incident occurred in January. (Petitioner's Br. at 2, Docket # 34.) Johnson further argues that M.J. testified that she did not know what it means to be drunk and that no assault ever occurred on the couch. (*Id.*) Finally, Johnson argues that the trial court entered into evidence a video from 2010 in which M.J. stated that Johnson got drunk and assaulted her on the dining room couch in January. (*Id.* at 2-3.) Johnson argues this video was inadmissible under Wis. Stat. § 908.08(3) and (5). (Petitioner's Reply Br. at 4, Docket # 29.) Wis. Stat. § 908.08 addresses the admission of audiovisual recordings of statements of children and pursuant to § 908.08(5), if such evidence is admitted, the party who has offered the statement into evidence may call the child to testify immediately after the statement is shown to the trier of fact. Johnson argues that the statute requires the videotape to precede direct and cross-examination and in his case, the videotape was played after M.J. testified. (*Id.*)

Johnson has not shown the court of appeals' decision was an unreasonable application of *Jackson*. As to the timing of the assault, contrary to Johnson's assertion, M.J. did not testify that no assault occurred in January. Rather, she testified that she did not know when the assault occurred, but that it was cold outside at the time. (Court Trial Day 1 at 21-22, Docket # 28-10.) The State need not prove the month of the assault. Rather, the State need only prove that sexual contact occurred and that M.J. had not yet reached the age of 13 at the time of the assault.

Further, the case turned on M.J.'s credibility. The court of appeals considered the evidence M.J. presented, including the inconsistencies in her statement, and found the trial court did not err in finding Johnson guilty. M.J. testified that Johnson "touched [her] lower part with his stuff." (Docket # 28-10 at 22.) Although the facts surrounding the assaults were inconsistent, M.J. was

consistent in her testimony regarding the sexual contact between herself and Johnson. The State also presented evidence from a forensic interview program supervisor at the Child Protection Center with Children's Hospital of Wisconsin, Liz Ghilardi, who was qualified as an expert in the area of child sexual abuse dynamics. (Court Trial Day 2 at 20-23, Docket # 28-11.) Ghilardi testified that it is common for children to have difficulty being consistent when talking about multiple incidents of abuse because children are not able to differentiate between events and the child's answers can depend on how the question is asked or understood by the child. (*Id.* at 27.)

Johnson also argues that the trial court improperly admitted M.J.'s audiovisual statement under Wis. Stat. § 908.08. Specifically, Johnson argues that playing the videotape after M.J. testified, rather than before, as stated in § 908.08(5), was error. (Docket # 29 at 4.) As an initial matter, state court evidentiary errors do not normally entitle a defendant to habeas relief. *Anderson v. Sternes*, 243 F.3d 1049, 1053 (7th Cir. 2001). Habeas relief is only appropriate if an erroneous evidentiary ruling was so prejudicial that it compromised the petitioner's due process right to a fundamentally fair trial. *Id.* As this was a bench trial, the trial court noted that he had already viewed the videotape prior to trial in determining its admissibility and believed it was unnecessary to play the videotape again during the trial. (Docket # 28-10 at 55-56.) Thus, even if the court erred in its ruling under Wis. Stat. § 908.08, Johnson has not shown that his due process rights were violated.

Viewing the evidence in the light most favorable to the prosecution, as I must, I cannot conclude that no rational trier of fact could have found the essential elements of first degree sexual assault of a child beyond a reasonable doubt. As such, Johnson cannot show that the court of appeals unreasonably applied *Jackson* to the facts of his case or unreasonably determined the facts in light of the evidence presented.

*2.*     *Ineffective Assistance of Counsel*

Johnson argues that his trial counsel was ineffective in multiple ways: (1) counsel failed to hire an expert witness regarding whether he fit the characteristics of a pedophile and to challenge the suggestiveness of M.J.'s police interview; (2) counsel failed to object to the State's cross-examination of LaBrittany B. and to the State's closing argument; (3) counsel failed to move to suppress hearsay statements; (4) counsel failed to move to suppress prejudicial evidence; (5) counsel failed to call character witnesses; (6) counsel improperly advised Johnson to waive his right to testify; (7) counsel failed to object to the admission of M.J.'s videotaped statement; and (8) counsel failed to offer testimony that Johnson offered to submit to a DNA test. (Petitioner's Br., Docket # 2.)

2.1     Legal Standard

The clearly established Supreme Court precedent for ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, Johnson must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. To satisfy *Strickland's* performance prong, the defendant must identify "acts or omissions of counsel that could not be the result of professional judgment." *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1015 (7th Cir. 1988) (citing *Strickland*, 466 U.S. at 690). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 689). A reviewing court must seek to "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. We "must indulge a strong presumption that counsel's conduct

falls within a wide range of reasonable professional assistance," *id.*, and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *id.* at 690.

To establish prejudice, it is "not enough for the defendant to show that his counsel's errors had some conceivable effect on the outcome of the [trial]." *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001). A petitioner must show "that there is a reasonable probability that, but for counsel's errors, the result of the [trial] would have been different." *Strickland*, 466 U.S. at 694. This does not mean that the defendant must show that "counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. Rather, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Making this probability determination requires consideration of the totality of the evidence before the jury. *Id.* at 695. A "verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

A court deciding an ineffective assistance claim need not approach the inquiry "in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." *Id.*

Again, the Wisconsin Court of Appeals identified the correct governing legal rule; as such, the only issue me before is whether the state court unreasonably applied *Strickland* to the facts of Johnson's case or unreasonably determined the facts in light of the evidence presented.

### 2.2 Failure to Hire an Expert Witness

Johnson argues that his trial counsel was ineffective for failing to hire an expert witness to conduct an evaluation pursuant to *State v. Richard A.P.*, 223 Wis. 2d 777, 589 N.W.2d 674 (Ct. App. 1998). Johnson argues that his appellate counsel referred Johnson for a *Richard A.P.* evaluation and the doctor offered the opinion that Johnson did not appear to be sexually attracted to children of any age or gender. (Docket # 2 at 2.) The court of appeals noted that pursuant to *Richard A.P.*, a defendant is permitted to offer expert testimony that he or she does not exhibit character traits consistent with a sexual disorder such as pedophilia. (Docket # 1-1 at 15.) The court of appeals held that Johnson's appellate counsel explored the issue with trial counsel, and trial counsel explained that he did hire an expert, but the expert's testimony would not have been helpful to Johnson. (*Id.* at 16.)

Johnson's appellate counsel submitted a report from the expert he retained for postconviction and appellate proceedings. (*Id.*) While the report stated that Johnson had "normal" adult heterosexual arousal/interests and did not appear to be sexually attracted to children (of any age/gender), the report also stated that Johnson's score on the psychopathy checklist was "elevated," meaning that "despite all of the positive things noted above, he would be considered a 'risk' for having committed a sexual crime." (Answer to Habeas Petition, Exh. D, Docket # 28-4 at 11-12.) The report also stated that "the Abel Screen, a well-respected measure of sexual interest, places Mr. Johnson in the Highest Risk category of having committed a sexual offense." (*Id.* at 12.) The expert

stated then, as follows: "The bottom line? The results of this Richard A.P. evaluation would not be helpful in his appeal. It is highly unlikely that the results of a similar evaluation, if conducted at the time of his trial, would have been any different." (*Id.*)

The court of appeals, thus, found that further appellate proceedings as to this issue would have lacked arguable merit. (Docket # 1-1 at 16.) Johnson has not shown that the court of appeals' finding on this ground ran afoul of *Strickland*. Johnson cites only the first page of the expert's report (regarding his sexual interests), ignoring the expert's "bottom line" conclusion. Given the expert's conclusion that Johnson was a "risk" for having committed a sexual crime, was in the highest risk category for having committed a sexual offense despite his denials, and that the results of the *Richard A.P.* evaluation would not have been helpful at the time of trial, Johnson has not shown his counsel was ineffective in failing to present expert testimony pursuant to *Richard A.P.*

Johnson also argues that his trial counsel was ineffective for failing to present expert testimony regarding police suggestibility during a 2006 interview of M.J. (Docket # 2 at 2.) Johnson argues that during this interview, M.J. stated that Johnson squeezed her arm, to which the officer suggested that Johnson must have somehow hurt her private parts. (*Id.*) Although Johnson raised this argument in response to his counsel's no-merit report (Answer to Habeas Petition, Exh. C, Docket # 28-3 at 13-14), the court of appeals did not specifically address this issue. Thus, I will review this aspect of Johnson's ineffective assistance of counsel claim *de novo*. *See Warren v. Baenen*, 712 F.3d 1090, 1098 (7th Cir. 2013) ("Because the state courts did not reach the merits, AEDPA deference did not apply and *de novo* review was proper."). Even with *de novo* review, however, Johnson's argument fails. Johnson's appellate counsel hired an expert to review M.J.'s recorded statement for impermissibly suggestive interview techniques, and the expert found no major errors

were made by the police officer conducting the interview. (Docket # 28-4 at 11.) Thus, Johnson has not shown that counsel was ineffective for failing to hire an expert to challenge the police officer's interview of M.J. if an expert would not provide helpful testimony.

### 2.3 Failure to Object to State's Cross-Examination and Closing Argument

Johnson argues that his trial counsel was ineffective for failing to object to the State's misconduct, specifically, he argues the State improperly cross-examined LaBrittany B. regarding Johnson's prior alcohol usage and the State improperly misstated during closing argument that Johnson knew about allegations made against him in 2006 that M.J. disclosed in a medical report. (Docket # 2 at 3.) As to the first argument, the court of appeals found that the State's inquiries as to Johnson's alcohol consumption was directly related to the testimony and allegations in the case and thus was an appropriate area of inquiry, citing Wis. Stat. § 906.11(2) ("A witness may be cross-examined on any matter relevant to any issue in the case, including credibility.") (Docket # 1-1 at 14.) Thus, trial counsel had no obligation to allege prosecutorial misconduct in connection with the cross-examination of LaBrittany B. because the argument would have been meritless. (*Id.*)

Again, Johnson has not shown the court of appeals unreasonably applied *Strickland*. Johnson is correct that M.J. did not testify during trial that Johnson was drinking prior to assaulting her. Rather, it appears that she stated this during the January 2010 videotaped interview with police, which was admitted into evidence. (Answer to Habeas Petition, Exh. B, Docket # 28-2 at 28.) During trial, M.J. testified that Johnson did not drink alcohol while assaulting her. (Docket # 28-10 at 28.) Given M.J.'s prior statement that Johnson was drinking prior to assaulting her, Johnson's drinking habits were relevant to the case. Further, on direct, LaBrittany B. testified that Johnson was not drinking on the weekend of January 22, 2010. (Docket # 28-11 at 50-51.) Thus, it was

appropriate for the State to then explore this issue on cross-examination. (*Id.* at 58.) Johnson has not shown the court of appeals erred as to this first issue.

As to the second issue, Johnson argues that his trial counsel was ineffective for failing to object to the State's closing argument when the prosecutor misstated that Johnson knew about allegations made against him in 2006. (Docket # 2 at 3.) As the court of appeals explained, Johnson argues that the State improperly speculated about why Johnson allowed M.J. to continue visiting him after she accused him of sexual assault in 2006, implying that he was aware of the accusation at that time. (Docket # 1-1 at 14-15.) At sentencing, the State took the position that Johnson "might well be being truthful" when he denied knowing about the allegations in 2006. (*Id.* at 15.) Johnson further argues that the State argued that M.J. told an examining physician in 2006 about Johnson's assaults when physician's notes from 2006 show that, in fact, the doctor received the information about Johnson's assaults from a third party. (*Id.*)

The court of appeals, citing *State v. Mayo*, 2007 WI 78, ¶ 43, 301 Wis. 2d 642, 734 N.W.2d 115, stated that when a defendant alleges that a prosecutor's statements and arguments constituted misconduct, the test applied is whether the statements so infected the trial with unfairness as to make the resulting conviction a denial of due process. (*Id.*) This test articulated by the court of appeals is consistent with Supreme Court law. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986) ("The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'") (internal citation omitted). The court of appeals found that the prosecutor's "speculation and imprecise closing remarks during this bench trial" did not undermine the fairness of the trial. (Docket # 1-1 at 15.) The court of appeals noted that

arguments of counsel are not evidence and presumed the trial court, as fact finder, knew and applied this well-settled principle. (*Id.*)

Johnson does not attempt to explain how the prosecutor's statements and arguments so infected the trial with unfairness as to deny him due process. The court of appeals correctly found that the State's closing arguments are not evidence and even if imprecise, the statements did not "so infect" this bench trial with unfairness as to constitute a denial of due process. He has not shown that the court of appeals' unreasonably applied *Strickland*.

### 2.4    Failure to Move to Suppress Hearsay Statements

Johnson argues that during trial the State introduced into evidence a medical report that contained a statement made by M.J.'s mother, who had not testified at trial, stating that Johnson gave her a sexually transmitted disease and assaulted M.J. (Docket # 2 at 4.) Johnson argues that his trial counsel was ineffective for failing to object to these statements. The court of appeals, in addressing this issue, noted that Johnson referred the court of appeals to a portion of the sentencing transcript in which the prosecutor described a statement made by M.J.'s mother in 2006 when she reported M.J.'s allegation of sexual abuse. (Docket # 1-1 at 18.) The court of appeals found that the rules of evidence were inapplicable to sentencing proceedings and furthermore, evidentiary errors in a bench trial are harmless unless they probably changed the outcome of the trial. (*Id.*) The court of appeals further found that the record was clear that the trial court's finding of guilt did not turn on statements made by M.J.'s mother in 2006; rather, the trial court convicted Johnson because it found M.J. credible, and believed her. (*Id.*)

Johnson argues that this is not a sentencing issue because the hearsay statement was entered into evidence during trial. (Docket # 34 at 7.) Johnson further argues that this hearsay statement did

influence the trial court's finding of guilt because the court stated, in finding M.J.'s testimony credible, that she was consistent in one thing, that Johnson "put his private on her private" and that was "consistent when you go back all the way to 2006." (*Id.* at 8.) Johnson argues that it was not until sentencing that the trial court was made aware that this statement about the alleged abuse was made by M.J.'s mother, not M.J. (*Id.* at 8-9.)

Johnson refers to a medical report dated May 2, 2006 which states that M.J. "disclosed to her mother" that Johnson "put his private on her private." (Answer to Habeas Petition, Exh. H, Docket # 28-8 at 83.) The record further states that M.J.'s mother reported that Johnson gave her sexually transmitted diseases while pregnant. (*Id.*) Johnson is correct that this report was entered into evidence during trial. (Docket # 28-11 at 12-13.) However, even assuming the trial court erred in admitting this record, Johnson cannot show that he was prejudiced by it. Johnson argues that the trial court was convinced of Johnson's guilt, at least partly, by the fact that M.J. was consistent in her statements that Johnson assaulted her, going back to 2006. Johnson argues that the trial court relied solely on the hearsay record in finding him guilty because the trial court used the phrase "put his private on her private," a phrase that came from the medical record.

During sentencing, the State told the court that in 2006, M.J.'s mother reported that M.J. and two of her sisters were assaulted by Johnson. (Docket # 28-3 at 37.) Johnson takes issue with the admission of this medical record because he argues that M.J.'s mother is effectively testifying through this record. However, M.J. testified at trial that Johnson first touched her when she was seven years old (in 2006). (Docket # 28-10 at 26.) And the trial court made clear during sentencing that he believed M.J.'s testimony and that M.J.'s mother "[had] no credibility with me." (Answer to Habeas Petition, Exh. O, Docket # 28-15 at 26.) Thus, in finding Johnson guilty, the trial court

was considering the consistency in M.J.'s testimony that she was assaulted repeatedly by Johnson, dating back to 2006. Any statements made by M.J.'s mother did not weigh in the trial court's finding of guilt. For these reasons, Johnson was not prejudiced by the admission of this medical record and thus is not entitled to habeas relief on this ground.

### 2.5 Failure to Suppress 2010 Recorded Statement

Johnson argues his trial counsel was ineffective for failing to suppress M.J.'s 2010 recorded interview with law enforcement. (Docket # 2 at 4.) Johnson argues that M.J. told police that Johnson was taken by officers before for touching her and her sister inappropriately and that there was a statement made by M.J.'s sister that Johnson had never touched her inappropriately. (*Id.*) The court of appeals' rejected Johnson's claim of ineffective assistance, finding that he was not prejudiced by his trial counsel's failure to challenge any alleged inaccuracies in M.J.'s recollections about the aftermath of her 2006 disclosure. (Docket # 1-1 at 12.) The court of appeals found that Johnson's counsel thoroughly impeached M.J. and the trial court well understood M.J.'s faulty memory and inconsistencies in her testimony in finding her credible. (*Id.* at 13.)

Regarding the portion of the 2010 recorded statement where M.J. told police that Johnson touched her sister inappropriately, the court of appeals found that M.J.'s "fleeting" reference to a "long ago" event involving her sister was at worst a harmless error in the bench trial, especially given the fact that the State had already advised the trial court during pretrial proceedings that M.J.'s sister alleged in 2006 that Johnson had sexually assaulted her. (*Id.*) Thus, Johnson was not prejudiced when the allegation was briefly mentioned during the bench trial. (*Id.* at 14.)

Finally, the court of appeals found that trial counsel was not ineffective for failing to offer proof that M.J.'s sister told police in 2010 that Johnson never assaulted her because evidence that

Johnson did not sexually assault M.J.'s sister was irrelevant to the determination of whether Johnson sexually assaulted M.J. (*Id.*)

Johnson has not shown the court of appeals unreasonably applied *Strickland* in finding he was not prejudiced by any of these alleged errors by trial counsel. The trial court did consider the inconsistencies in M.J.'s testimony, noting that the "details are all over the map," but still believed her to be credible when she consistently testified that Johnson "puts his stuff in her private area; puts his private on her private." (Docket # 28-12 at 28.) Further, because this was a bench trial, I agree that the reference to an assault allegation by M.J.'s sister did not unduly influence the trial court as finder of fact. The trial court had already heard this fact during pretrial proceedings and Johnson has not shown that the trial court considered this inadmissible evidence in finding him guilty. For these reasons, Johnson is not entitled to habeas relief on this ground.

### 2.6    Failure to Call Character Witnesses

Johnson argues that his trial counsel was ineffective for failing to call Johnson's mother or Johnson's stepfather as character witnesses. (Docket # 2 at 4.) Johnson states that both his mother and stepfather stated during sentencing that they believed Johnson was incapable of sexually assaulting anyone. (*Id.* at 5.) In a supplement to his no-merit report, Johnson's appellate counsel stated that he explored the issue with trial counsel, who told him that at the time of trial, Johnson's family was not cooperative with him and therefore he felt that they would not make good witnesses or offer relevant testimony. (Docket # 28-4 at 8.) Appellate counsel further stated that he spoke to Johnson about his mother, and Johnson told him that while his mother lived with him, she was not with Johnson and M.J. at all times, so she could not definitively testify that Johnson did not assault

M.J. (*Id.*) Thus, Johnson's mother's testimony would have been of little value and defense counsel strategically decided not to call her as a witness. (*Id.*)

The court of appeals accepted Johnson's appellate counsel's explanation of trial counsel's strategic choice not to call Johnson's mother or stepfather as character witnesses. Johnson does not challenge the basis for his trial counsel's strategic choice not to call his family members as character witnesses and "'[s]o long as an attorney articulates a strategic reason for a decision that was sound at the time it was made, the decision generally cannot support a claim of ineffective assistance of counsel.'" *Toliver v. Pollard*, 688 F.3d 853, 862 (7th Cir. 2012) (quoting *Yu Tian Li v. United States*, 648 F.3d 524, 528 (7th Cir. 2011)). Rather Johnson merely asserts that his family was at every court hearing and that he had strong family support. (Docket # 34 at 10.) Beyond this assertion, however, Johnson does not argue that the court of appeals' finding ran afoul of *Strickland*. Thus, Johnson's claim of ineffective assistance of counsel on this ground fails.

### 2.7    Improperly Advised Johnson to Waive Right to Testify

Johnson argues that his trial counsel improperly advised Johnson not to testify. (Docket # 2 at 5.) The respondent argues that Johnson procedurally defaulted this claim because although he raised the issue before the Wisconsin Supreme Court, he did not raise the issue in his response to counsel's no-merit report. (Resp.'s Br. at 19, Docket # 33.) Before a federal court may consider the merits of a state habeas petitioner's claims, the petitioner must exhaust the remedies available to him in the state courts. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). This involves invoking one complete round of the normal appellate process, including seeking discretionary review before the state supreme court to exhaust a claim. *McAtee v. Cowan*, 250 F.3d 506, 508–09 (7th Cir. 2001).

Johnson does not contest that he did not present the issue before the court of appeals; rather, he counters that the court of appeals found the issue and addressed it on its merits. (Docket # 29 at 8.) Johnson is incorrect, however, that the court of appeals found the issue (as Johnson now presents it) and addressed it on the merits. The court of appeals did not address whether trial counsel was ineffective in advising Johnson not to testify; rather, the court of appeals addressed whether Johnson could mount an arguably meritorious challenge to his waiver of the right to testify. (Docket # 1-1 at 10.) Whether Johnson knowingly waived his right to testify is a different issue entirely than whether his trial counsel provided ineffective assistance of counsel in advising him not to testify. Thus, I agree that Johnson procedurally defaulted this claim and has offered no cause or prejudice to overcome the default, nor has he shown that the denial of relief will result in a miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)) (finding that a procedural default will bar federal habeas relief unless the petitioner can demonstrate both cause for and prejudice stemming from that default or he can establish that the denial of relief will result in a miscarriage of justice).

However, even considering the merits of Johnson's claim, he cannot show ineffective assistance of counsel. Johnson argues that he would have testified at trial that the "only reason M.J. changed the dates up at trial was because she knew Mr. Johnson's girlfriend was working at this other time and that Mr. Johnson's mother wasn't living in his house at this other time. This was a way for M.J. to eliminate both defense witnesses out of the picture." (Docket # 34 at 11.) But Johnson cannot testify as to what M.J. was thinking when she gave her previous statements and when she testified at trial and the trial court considered the inconsistencies in M.J.'s testimony. Thus, Johnson is not entitled to habeas relief on this ground.

### 2.8 Failure to Offer Testimony Regarding Offer to Take DNA Test

Johnson argues his trial counsel was ineffective for failing to offer evidence that Johnson offered to take a DNA test during an interrogation conducted on January 28, 2010 and January 29, 2010. (Docket # 2 at 5.) The court of appeals acknowledged that evidence that a defendant offered to undergo DNA testing may reflect consciousness of innocence and a defendant may present such evidence for that purpose under some circumstances. (Docket # 1-1 at 17.) The court of appeals found, however, that the record did not support Johnson's claim that he offered to submit to DNA testing. Appellate counsel submitted recordings of Johnson's custodial statements to police on January 28, 2010 and January 29, 2010. (*Id.*) The court of appeals found that the recordings reflected Johnson's "unwavering refusal to undergo DNA testing, despite the interrogating officers' requests for such testing and suggestions that such testing might exonerate him." (*Id.*)

Johnson argues that he suggested that the officer could use an earlier buccal swab test that he had taken for a paternity test in the courts, and the officer agreed to "do it that way." (Docket # 29 at 8.) The recordings were not made part of the record in this habeas case and Johnson asked that the custodial interviews be included in the record. (*Id.*) On October 31, 2017, I ordered the respondent to supplement the record with the recordings of Johnson's January 28, 2010 and January 29, 2010 custodial interviews. The respondent subsequently provided the recordings. (Docket # 37.) I listened to the recordings of Johnson's interview from both days and agree with the court of appeals that at no point in the interview did Johnson agree to take a DNA test. To the contrary, as the court of appeals stated, the "recordings reflect Johnson's unwavering refusal to undergo DNA testing, despite the interrogating officers' requests for such testing and suggestions that such testing might exonerate him." (Docket # 1-1 at 17.)

I listened in particular for Johnson's assertion that he suggested to the officers that they could use an earlier buccal swab test that he had taken for a paternity test in the courts, and the officers agreed to "do it that way." (Docket # 29 at 8.) However, neither interview contains such a statement. The fact Johnson took paternity tests in relation to several of his children was raised in both interviews; however, it was raised in the context of establishing whether M.J. was Johnson's biological daughter. Johnson never suggested that the past tests could be used to compare to the DNA profile allegedly found on M.J. Because Johnson never agreed to take a DNA test, his counsel was not ineffective for failing to raise the issue. Johnson is not entitled to habeas relief on this ground.

### 2.9    Failure to Object to Admission of Videotaped Statement

Johnson argues his trial counsel was ineffective for failing to object to the admission at trial of M.J.'s 2010 videotaped statement. (Docket # 2 at 6.) Pursuant to Wis. Stat. § 908.08(3), the court "shall admit" an audiovisual recording of an oral statement of a child who is available to testify upon finding all of the following: (a) that the trial or hearing in which the recording is offered will commence: 1. Before the child's 12th birthday . . . (b) that the recording is accurate and free from excision, alteration and visual or audio distortion; (c) that the child's statement was made upon oath or affirmation or, if the child's developmental level is inappropriate for the administration of an oath or affirmation in the usual form, upon the child's understanding that false statements are punishable and of the importance of telling the truth; (d) that the time, content and circumstances of the statement provide indicia of its trustworthiness; and (e) that admission of the statement will not unfairly surprise any party or deprive any party of a fair opportunity to meet allegations made in the statement.

The court of appeals found that the trial court considered all of the requirements of § 908.08(3) and found that the requirements were satisfied. The court of appeals further found that the trial court must admit a videotaped statement that satisfies § 908.08(3). (Docket # 1-1 at 12.) Thus, Johnson's trial counsel was not ineffective for conceding the admissibility of the videotape. (*Id.*) The trial court did make proper findings under § 908.08(3):

> Then Exhibit 10 is the video from 2010 and I am not going to mark the transcript at this point. I will make the findings under 908.08 with regard to both Exhibit 8 and 10, that they were recordings before the child's 12th birthday. And the trial begins before her 12th birthday. That both recordings are accurate, free from excision, alteration, and video or audio distortion. She made statements upon an understanding that false statements are punishable and the importance of telling the truth and that the time, content, and circumstances of the statement provide indicia of worthiness and that there was no surprise by the admission of either one of these statements. And I will receive 8, 9, and 10 into evidence.

(Docket # 28-10 at 57-58.) Johnson does not argue that the videotape did not meet the requirements of § 908.08(3); rather, he argues the court should have considered the factors enumerated in *State v. Sorenson*, 143 Wis. 2d 226, 421 N.W.2d 77 (1988) and *State v. Huntington*, 216 Wis. 2d 671, 575 N.W.2d 268 (1998). (Docket # 2 at 6.) However, both *Sorenson* and *Huntington* address factors the court is to consider when assessing evidence under the residual hearsay exception for admission of a child's statement. Neither case addresses admissibility under § 908.08(3). Thus, Johnson has not shown that the court of appeals' decision ran afoul of *Strickland*.

## 2.10   Cumulative Prejudice

Finally, Johnson argues that his trial counsel made multiple errors and the cumulative effect of those errors should be considered together to determine the possibility of prejudice. (Docket # 2 at 8.) To demonstrate cumulative error, Johnson must establish that "(1) at least two errors were

- 23 -

committed in the course of the trial; (2) considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial." *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001). Even if Johnson's trial counsel arguably committed at least two errors, Johnson has not shown that the errors so infected the trial court's finding of fact that he was denied a fundamentally fair trial.

The only arguable errors trial counsel made was in failing to object to M.J.'s remark about her sister's allegations of sexual abuse and the admission of M.J.'s mother's hearsay statements through M.J.'s medical records. Neither of these records so infected the fact finder's deliberations as to deny Johnson a fundamentally fair trial. Again, as this was a bench trial, the fact finder was already aware of M.J.'s sister's allegations. Also, the trial court specifically stated that it did not find M.J.'s mother credible. Rather, the trial court's finding of guilt rested principally on the credibility of M.J., and the court found her credible despite inconsistencies in her testimony and lack of memory. For these reasons, Johnson cannot show cumulative prejudice.

### 3. Admission of Other Acts Evidence

At the final pretrial conference, the trial court noted that the State intended to go into evidence of other sexual assaults between Johnson and M.J. (Docket # 33-1 at 9.) The State proffered that M.J. first disclosed sexual contact between herself and Johnson in May 2006 and although there was insufficient evidence to issue criminal charges, there was a forensic interview from 2006 the State wished to offer into evidence. (*Id.* at 9-10.) The State offered that the purpose for which it was offering this evidence was to give the jury context and to show the fact that there was a particular purpose or plan and common features. (*Id.* at 11.) The court agreed and admitted the evidence. (*Id.* at 12.)

Johnson challenges a state court evidentiary ruling. As stated above, evidentiary rulings of state trial courts are normally not subject to habeas review. *Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001). In order to claim a right to relief, a petitioner must establish that the incorrect evidentiary ruling was so prejudicial that it violated his due process right to a fundamentally fair trial, creating the likelihood that an innocent person was convicted. *Id.* If the evidence is probative, it will be very difficult to find a ground for requiring as a matter of constitutional law that it be excluded; and if it is not probative, it will be hard to show how the defendant was hurt by its admission. *Watkins v. Meloy*, 95 F.3d 4, 6–7 (7th Cir. 1996).

Johnson argues that the admission of this evidence violated his rights to due process and a fair trial because he did not know what types of other acts the State was going to use because M.J. said that no assaults occurred between 2005 and 2010. (Docket # 29 at 9-10.) But both Johnson and his counsel viewed the 2006 and 2010 videotaped interviews of M.J. prior to trial; thus, it is difficult to believe that Johnson did not know what types of other acts the State was going to use. Furthermore, the State offered that the "other acts" would be "other allegations of sexual assault going back to 2006 through January of 2010." (Docket # 33-1 at 10-11.)

Also, Johnson has not shown that the trial court's evidentiary ruling was incorrect in the first place. The court of appeals noted that the State moved to admit evidence that Johnson began sexually assaulting M.J. in 2006 and continued to assault her through late January 2010. (Docket # 1-1 at 5.) The State proffered that M.J. first made a documented complaint about Johnson in 2006 and on May 2, 2006, when she was interviewed by a police officer, she disclosed that Johnson touched her vaginal area. (*Id.*) In 2010, M.J. gave a statement in which said that every time she is asleep, Johnson is drunk and touches her everywhere in places he should not be touching her. (*Id.*)

The State explained that it wanted to present evidence of Johnson's prior acts of sexually assaulting M.J. because they: (1) provided a context for the charge; (2) supported the State's theory that Johnson's actions were part of a plan to perpetrate ongoing assaults on her; and (3) explained why M.J. had difficulty in describing the precise memory of the specific event charged. (*Id.* at 5-6.)

The court of appeals stated, pursuant to Wis. Stat. § 904.04(2), that other crimes, wrongs, or acts are admissible to support a contention that the crime charged is part of a larger plan. (*Id.* at 6.) The court of appeals further stated that context, credibility, and background are also permissible purposes for other acts evidence. (*Id.*) The court of appeals found that the trial court considered the proper factors, applied the appropriate standard of law, and reached a conclusion that a reasonable judge could reach and thus properly exercised its discretion. (*Id.*)

Johnson has not established that the trial court's evidentiary ruling was incorrect or somehow violated his due process right to a fundamentally fair trial. Thus, Johnson is not entitled to habeas relief on this ground.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

When the case is resolved on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Section 2253 mandates that both showings be made before a certificate of appealability is granted. *Id.* at 485. Each component of the § 2253(c) showing is part of a threshold inquiry; thus, the court need only address one component if that particular showing will resolve the issue. *Id.*

Jurists of reason would not find it debatable that my findings as to Johnson's sufficiency of the evidence, ineffective assistance of counsel, and state evidentiary ruling claims were correct. Thus, I will deny Johnson a certificate of appealability. Of course, Johnson retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

### ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 28th day of November, 2017.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge